IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEONARD WILLIAMS, # R-05138, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 14-cv-506-JPG |
| DR. JAMES FENOGLIO, PHILLIPPE, DR. PHIL MARTIN, STEPHINE REED, HALLINGWORTH, LT. ROBERT BOLDREY, LT. VAUGHN, LT. DALLAS, EUBANK, WILLIS, RHONDES, NURSE POTTS, DOWNEY, and CUMMINS, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a 22-year sentence for armed robbery as well as sentences for several other related convictions. His claims stem from injuries he suffered in 2012, followed by the Defendants' deliberate indifference to his medical condition, retaliation, and a conspiracy to deny him medical care.

In the complaint, Plaintiff states that on May 12, 2012, he twisted his ankle while playing basketball (Doc. 1, p. 9). The ankle quickly became swollen to the point that Plaintiff was unable to walk, and an officer escorted him to the Health Care unit. There, he was examined by Defendant Nurse Hallingworth, who scheduled him for an x-ray in two days. She gave him a permit for crutches, an Ace wrap, and ice for 24 hours. Plaintiff asked for a low-bunk and low-gallery permit because his ability to climb stairs and maneuver to the top bunk would be

impaired. Defendant Hallingworth denied the permits, telling Plaintiff it would be up to his Wing Officer to grant the request (Doc. 1, p. 10).

Later that day, Plaintiff asked the Wing Officer, Defendant Willis, for help because he could not get up or down the stairs or climb into the top bunk in his condition. Defendant Willis instructed Plaintiff to talk to the Lieutenant. That evening on Plaintiff's way to dinner, he asked Defendant Lt. Boldrey for help, but was told it was "a medical issue and a Doctor's recommendation" (Doc. 1, p.10). Over the next three days, Plaintiff spoke to Defendant Officers Dallas, Vaughn, Willis, and Eubank about his mobility impairments, but each refused to take any action, because it was a "medical issue." Plaintiff also personally spoke with Defendant Warden Hodge[1] on May 14, 2012, about his need for a low-bunk/low-gallery permit, but the warden responded that he had nothing to do with medical issues and Plaintiff needed a doctor's recommendation (Doc. 1, p. 11).

Later on May 14, Plaintiff saw Defendant Dr. Fenoglio. The doctor renewed Plaintiff's crutch permit because it would be two weeks before Plaintiff could walk unaided. Plaintiff appealed to him for the low-gallery/low-bunk permit, explaining that the other Defendants had denied it. However, Defendant Fenoglio refused to issue the low-gallery/low-bunk permit, saying the Wing Officer (who had already passed the buck) should take care of it.

On May 12,[2] Plaintiff was on his way up the stairs when his crutch slipped, causing him to come down hard on his bad ankle and then fall backward down eight steps (Doc. 1, p. 12). He landed on his back, head, and shoulders. He was taken to Health Care on a stretcher in severe

---

[1] Defendant Hodge was inadvertently omitted as a party Defendant herein; his name was included in the caption and in the body of the complaint, but not in the list of Defendants on page 2. The Clerk shall be directed to add him as a Defendant.

[2] The Court questions whether the May 12 date is correct, because it appears that Plaintiff is describing events in chronological order, indicating that this second injury occurred after his initial visit to Defendant Dr. Fenoglio on May 14.

pain. While there, Defendant Nurse Cummins and Defendant Officers Vaughn and Rhondes tried to convince Plaintiff that nothing was wrong with his back and shoulder, and "forced" him up off the stretcher by grabbing his bad shoulder while ignoring his "agonizing screams" from the pain. *Id*. He was sent back to his unit in a wheelchair, and was finally issued the low-bunk and low-gallery permit.

On May 16, 2012, Plaintiff saw Defendant Dr. Fenoglio for his back and shoulder injuries suffered in the fall (Doc. 1, p. 15). Defendant Fenoglio ignored the severity of Plaintiff's pain, and prescribed only analgesic balm and acetaminophen. Those medications failed to stop Plaintiff's pain at all. Defendant Fenoglio did not order an x-ray.

Plaintiff wrote over ten grievances complaining about the lack of proper medical attention, and requested to be sent to an outside hospital or transferred to a different prison. At some time prior to his injuries, Plaintiff had filed grievances against Defendants Fenoglio and Martin (the Health Care Unit Administrator) regarding an unrelated problem with soy food (Doc. 1, pp. 15, 20). He continued to submit request slips for further medical treatment of his back and shoulder injuries, many of which were denied.

On June 15, 2012, Nurse John Doe gave Plaintiff an x-ray (Doc. 1, p. 16).

On June 5 and 19, 2012, Plaintiff was called back to Health Care and saw Defendant Phillippe (nurse practitioner). She told him that the grievance he wrote against Defendant Fenoglio for denying the low-bunk/low-gallery permit "will not stick," and if he complained about the officers not helping him, she would not help him either. She tested and examined Plaintiff, diagnosed him with arthritis and/or a torn muscle, and recommended that he do certain workouts or exercises for his shoulder. Performing these movements was extremely painful. Plaintiff followed these exercise recommendations for several months, through at least October

2012 (Doc. 1, pp. 16-20). He claims that she "maliciously and intentionally diagnosed [him] with the wrong treatment" (Doc. 1, p. 17), and should not have told him to exercise when his back was so fragile. He lists several incidents when his back "went out" or he had shoulder pain as a result of exercising or lifting weights (Doc. 1, p. 19). Further, she did not order the proper type of x-ray or an MRI, and merely gave him medication for pain and not to cure the injury (Doc. 1, p. 18).

On September 13, 2012, Plaintiff again consulted Defendant Fenoglio for the shoulder injury. He told Plaintiff that if he had not written the grievances on Defendant Martin and the medical staff over the soy food, his back and shoulder injuries "would have been cured by now" (Doc. 1, p. 20). Defendant Fenoglio told Plaintiff he was leaving his job and didn't care any more about Plaintiff's situation, but he scheduled an x-ray and physical therapy for the shoulder. After Defendant Fenoglio left Lawrence, Defendant Martin canceled the physical therapy order, and he got no more treatment for that painful condition until May 22, 2013, a full year after the injury.

Between July 2012 and April 2013, Plaintiff wrote over 30 request slips seeking treatment for his shoulder, and filed a grievance (Doc. 1, p. 21). However, many times he was not called to Health Care when other inmates were called, or his requests were denied (he includes a detailed list of these incidents and dates between July 2012 and March 2013[3]) (Doc. 1, pp. 21-22). On four different dates, Defendant Nurses Potts, Downey, and John Doe called all other prisoners who had received call passes for medical visits, but refused to call Plaintiff even though he had also been issued a pass for treatment of his back or shoulder. When he finally was called on October 15, 2012, Defendant Nurse Reed told him that he "had an 'X' on his back,"

---

[3] Elsewhere in the complaint, Plaintiff states he was taken to at least two health care appointments during this time. He saw Defendant Phillippe on August 14, 2012, and Defendant Fenoglio on September 13, 2012).

referring to the grievance Plaintiff had written on the medical staff (Doc. 1, p. 22). Plaintiff challenged her decision to charge him a co-payment for the visit because he was coming for follow-up care. She prescribed Ibuprofen for his back.

After the October 15, 2012, visit to Nurse Reed, Plaintiff was never called out for treatment again, and claims that the medical staff destroyed his request slips. Only after Plaintiff's father contacted Defendants Martin and Hodge in April 2013 was Plaintiff called again to see a nurse, which resulted in a referral to Dr. Coe (Doc. 1, p. 22).

On May 22, 2013, Dr. Coe (who is not a Defendant) evaluated Plaintiff, and diagnosed him with a torn rotator cuff that would likely need surgery, noting it was in bad condition due to the lack of treatment (Doc. 1, p. 21). He stated the back injury was probably a pinched nerve that would need outside hospital treatment after Plaintiff was released (Doc. 1, p. 22). Plaintiff had 120 days of physical therapy for his shoulder, which was completed in October 2013. At that time, Nurse Tillman (also not a Defendant) told him that his shoulder was still seriously damaged and he would be referred back to Dr. Coe. However, this never happened, and Plaintiff continues to experience severe shoulder pain that has gone untreated.

Plaintiff alleges that these facts demonstrate deliberate indifference to his serious medical needs, failure to properly evaluate his condition or provide adequate medical treatment, deliberate denial and delay of treatment in retaliation for Plaintiff's prior grievances against Defendants Martin and Fenoglio, and a conspiracy between the medical Defendants and Defendant Warden Hodge to deny medical care.

As relief, Plaintiff seeks damages, a transfer to another prison, and a preliminary injunction to require specific treatment in the form of a "proper X-ray and MRI" (Doc. 1, p. 32). He did not submit a separate motion for injunctive relief.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

In the complaint, Plaintiff outlines several claims which he labels as Counts One through Six; however, he failed to include a Count Three (Doc. 1, pp. 13-31). Therefore, the Court shall reorganize and renumber the claims as described below. The parties and the Court will use the Court's designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action, which shall receive further review:

**Count 1:** Eighth Amendment claim for deliberate indifference to medical needs, against Defendants Hallingworth, Fenoglio, Boldrey, Vaughn, Dallas, Willis, Eubank, and Hodge, for denying Plaintiff a low-bunk/low-gallery permit between May 12-16, 2012, after his ankle injury;

**Count 2:** Eighth Amendment claim against Defendants Fenoglio, Martin, Potts, Downey, Cummins, John Doe Nurse,[4] Vaughn and Rhondes,[5] for deliberate indifference to Plaintiff's need for treatment of his back and shoulder injuries and for pain relief from those injuries,

**Count 3:** Retaliation claim against Defendants Hallingworth, Fenoglio, Martin, Potts, Downey, Phillippe, Reed, Hodge, and John Doe Nurse for delaying or denying medical treatment for Plaintiff's ankle, back, and shoulder injuries because Plaintiff had filed soy-diet-related grievances against Fenoglio and Martin and other grievances over inadequate treatment of these injuries;

**Count 4:** Conspiracy claim against Defendants Hallingworth, Fenoglio, Martin, Potts,

---

[4] This Count and Counts 3 and 4 refer to the John Doe Nurse who refused to call Plaintiff for his medical appointment(s) between July and October 2012 (Doc. 1, p. 21). The Clerk shall be directed to add the John Doe Nurse as a party.

[5] Defendants Vaughn and Rhondes are the only non-medical-professionals included in this Count; they and Defendant Nurse Cummins are alleged to have grabbed Plaintiff's injured shoulder and forced him upright after he was taken to the Health Care Unit following his fall down the stairs.

Downey, Phillippe, Reed, Hodge, and John Doe Nurse, for conspiring to deny medical treatment to Plaintiff in retaliation for grievances he had filed against medical staff.

In addition, Plaintiff's allegations indicate he wishes to pursue the following state-law claim, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a):

**Count 5:** Medical malpractice/negligence claim against Defendants Hallingworth, Fenoglio, and Phillippe for failing to properly diagnose or treat his ankle, shoulder, and back injuries.

**Deliberate Indifference to Serious Medical Needs – Counts 1 and 2**

In order to demonstrate a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a plaintiff must show that prison officials knew about an objectively serious risk to his health or safety, yet acted or failed to act with deliberate indifference to the risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (a delay in treatment that "exacerbated the injury or unnecessarily prolonged an inmate's pain" may constitute deliberate indifference). Plaintiff's allegations against the Defendants named in Count 1 above meet this pleading standard, as to the risk he faced from being forced to climb stairs and get up and down from the top bunk while on crutches for his ankle injury.

Count 2 encompasses claims against Defendants Cummins, Vaughn, and Rhondes for their rough handling and failure to treat Plaintiff immediately after he injured his back and shoulder in the fall down the stairs, as well as his claims that Defendant Fenoglio failed to treat Plaintiff for his ongoing pain, Defendant Martin canceled his physical therapy, and Defendants Potts, Downey, and John Doe refused to summon him for medical appointments. However, this deliberate indifference claim shall not proceed against Defendants Phillippe or Reed.

A defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532

F.3d 675, 679 (7th Cir. 2008); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (courts will not take sides in disagreements with medical personnel's judgments or techniques). The mere fact that a prescribed treatment has proven ineffective does not rise to the level of deliberate indifference. *Duckworth v. Ahmad,* 532 F.3d 675, 680 (7th Cir. 2008). Further, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Defendant Phillippe treated Plaintiff by placing him on an exercise program to address his shoulder and/or back problems. She may have been misguided or wrong, and Plaintiff clearly disagrees with her choice of treatment, but this will not support a constitutional claim. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (disagreement with medical professional's course of treatment does not constitute deliberate indifference); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques). Likewise, Plaintiff's belief that Defendant Phillippe should have ordered a different type of x-ray or an MRI does not show deliberate indifference on her part. A disagreement as to proper treatment, especially between a medical professional and a layperson with no medical training, does not amount to a constitutional violation. Plaintiff may proceed against Defendant Phillippe on the retaliation, conspiracy, and (subject to the conditions elaborated below) state law malpractice/negligence claims. However, the complaint does not support a deliberate indifference claim against her.

Similarly, Defendant Reed treated Plaintiff by giving him medication for his back pain. His primary complaint against her is that she required him to pay a co-payment, despite his insistence that he should not be charged for follow-up care for a previous injury. This is not a

constitutional violation. Whether or not a statutory exemption (such as for a follow-up visit) should apply to the co-payment rule is a question of state law, not cognizable in a § 1983 action. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution"). Plaintiff has thus failed to state a deliberate indifference claim against Defendant Reed. He may, however, proceed against her in Counts 3 and 4.

A brief mention of two other matters is in order. Plaintiff asserts that the medical Defendants had a "conflict of interest" in treating him, because they wanted to cover up their mistakes (Doc. 1, pp. 15-20). An alleged conflict of interest does not violate the Constitution. However, the factual allegations in this section of the complaint are relevant to several of the counts enumerated herein.

Plaintiff seeks to assert a separate Fourteenth Amendment claim for deprivation of life, liberty and property as a result of the improper medical treatment (Doc. 1, p. 26). This claim is based on the exact same factual allegations that underlie Plaintiff's Eighth Amendment claims, and is duplicative of Counts 1 and 2. Therefore, the Court shall not give further consideration to the Fourteenth Amendment claim, but instead shall evaluate only the Eighth Amendment claims as discussed above. *See Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels"); *Williams v. Snyder*, 150 Fed. Appx. 549, 552-53 (7th Cir. 2005) (dismissing equal protection, access to courts, due process, and Eighth Amendment claims as duplicative of retaliation and freedom of religion claims).

### Count 3 – Retaliation and Count 4 – Conspiracy

These claims against the medical-provider Defendants and the warden are interrelated, as Plaintiff asserts these Defendants denied or delayed treatment for his injuries in retaliation for his grievances, as well as conspired to retaliate against him by denying or delaying treatment. Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). Identifying the complaint or grievance, and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Plaintiff has done so here – he describes grievances he filed against Defendants Fenoglio and Martin over the soy diet issue which predated his injuries, as well as grievances he filed against the medical Defendants who failed to properly treat the injuries which are the subject of this action.

Further, civil conspiracy claims are cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under section 1983). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date . . . ." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002). At this stage, Plaintiff's claims in Counts 3 and 4 may proceed for further review.

### Count 5 – Medical Malpractice/Negligence

Because Plaintiff asserts that Defendants Hallingworth, Fenoglio, and Phillippe failed to properly diagnose his injuries and rendered inadequate treatment, he has articulated claims for malpractice/negligence as well as for deliberate indifference. Where a district court has original

### Count 3 – Retaliation and Count 4 – Conspiracy

These claims against the medical-provider Defendants and the warden are interrelated, as Plaintiff asserts these Defendants denied or delayed treatment for his injuries in retaliation for his grievances, as well as conspired to retaliate against him by denying or delaying treatment. Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). Identifying the complaint or grievance, and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Plaintiff has done so here – he describes grievances he filed against Defendants Fenoglio and Martin over the soy diet issue which predated his injuries, as well as grievances he filed against the medical Defendants who failed to properly treat the injuries which are the subject of this action.

Further, civil conspiracy claims are cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under section 1983). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date . . . ." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002). At this stage, Plaintiff's claims in Counts 3 and 4 may proceed for further review.

### Count 5 – Medical Malpractice/Negligence

Because Plaintiff asserts that Defendants Hallingworth, Fenoglio, and Phillippe failed to properly diagnose his injuries and rendered inadequate treatment, he has articulated claims for malpractice/negligence as well as for deliberate indifference. Where a district court has original

jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)). While this Court has supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367, this is not the end of the matter.

Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a) (as amended by P.A. 90-579, effective May 1, 1998).[6]  A separate affidavit and report shall be filed as to each defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b).

---

[6] P.A. 94-677, effective August 25, 2005, which amended 735 ILL. COMP. STAT. §5/2-622(a) and other portions of the Illinois statute governing health care and medical malpractice actions, was held to be unconstitutional in its entirety in *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010). As a result

Failure to file the required affidavit is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, 2007 WL 1655799 *4-5 (S.D. Ill. 2007).

In the instant case, Plaintiff has failed to file the necessary affidavits. Therefore, the claims in Count 5 are subject to dismissal. However, Plaintiff shall be allowed 35 days to file the required affidavits. Should Plaintiff fail to timely file the required affidavits, Count 5 shall be dismissed without prejudice. *See* FED. R. CIV. P. 41(b).

**Disposition**

The Clerk is **DIRECTED** to add Defendants Warden Hodge and John Doe Nurse as parties to this action.

**IT IS FURTHER ORDERED** that as to the medical malpractice/negligence claims in **COUNT 5** against Defendants **FENOGLIO, PHILLIPPE,** and **HALLINGWORTH,** Plaintiff shall file the required affidavits pursuant to 735 ILL. COMP. STAT. §5/2-622, within 35 days of the date of this order (**on or before July 7, 2014**). Should Plaintiff fail to timely file the required affidavits, **COUNT 5** shall be dismissed without prejudice.

The Clerk of Court shall prepare for Defendants **FENOGLIO, PHILLIPPE, MARTIN,**

---

of *Lebron*, the previous version of the statute is now in effect. *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010).

**REED, HALLINGWORTH, BOLDREY, VAUGHN, DALLAS, EUBANK, WILLIS, RHONDES, POTTS, DOWNEY, CUMMINS,** and **HODGE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendant(s) until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received

by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 2, 2014**

                                                       *s/J. Phil Gilbert*
                                                     United States District Judge