## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LEONARD WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-00506-MJR-PMF |
| | ) | |
| JAMES FENOGLIO, | ) | |
| LYNN PHILIPPE, | ) | |
| PHIL MARTIN, | ) | |
| STEPHANIE REED, | ) | |
| ANGIE HOLLINGSWORTH, | ) | |
| ROBERT BOLDREY, | ) | |
| ALAN DALLAS, | ) | |
| BRIAN EUBANK, | ) | |
| DALLAS WILLIS, | ) | |
| RODNEY RHODES, | ) | |
| PATRICIA POTTS, | ) | |
| CLAUDIA DOWTY, | ) | |
| KELSEY CUMMINS, | ) | |
| MARC HODGE, | ) | |
| and CECIL VAUGHN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### A.    Introduction and Procedural Overview

In May 2014 while incarcerated at Lawrence Correctional Center (within this Judicial District), Leonard Williams filed a civil rights complaint in this Court under 42 U.S.C. 1983, asserting that various correctional officers and health care professionals were deliberately indifferent to his medical needs, retaliated against him, and conspired to deny him medical care.

On threshold review of the case under 28 U.S.C. 1915A, Judge J. Phil Gilbert (the District Judge to whom the case was assigned) found that Williams had articulated several colorable federal causes of action, which the Court organized as Counts 1 through 5 (*see* Doc. 7, pp. 6-7).  Defendants were served (or waived service), an amended complaint was filed in December 2014, and motions were filed.  On June 7, 2016, the case was reassigned from Judge Gilbert to the undersigned Chief District Judge.

Williams challenges his conditions of confinement at Lawrence and alleges violation of rights protected by the Eighth and First Amendments to the United States Constitution (Doc. 65).  Now before the Court is a motion for summary judgment for failure to exhaust administrative remedies, filed on March 20, 2015 with a supporting memorandum by seven Defendants – James Fenoglio, Stephanie Reed, Claudia Dowty, Patricia Potts, Kelsey Cummins, Lynn Philippe, and Angie Hollingsworth (Docs. 75-76).[1]  These Defendants argue that administrative remedies were not exhausted as to certain claims asserted by Williams in Counts 1, 3 and 4.

---

[1]     The docket sheet still reflects the names listed in Plaintiff's original and amended complaint, but subsequent pleadings have clarified the correct names of several Defendants.  The Clerk's Office is hereby **DIRECTED** to correct the docket sheet to reflect those corrections, including "Phillippe" (two Ls and two Ps, no first name) should be Lynn Philippe (first name added, only one L in last name), "Stephine Reed" should be Stephanie Reed, "Hallingworth" should be Angie Hollingsworth, "Lt. Dallas" should be Alan Dallas, "Eubank" should be Brian Eubank, "Willis" should be Dallas Willis, "Cummins" should be Kelsey Cummins, Potts should be Patricia Potts, "Rhondes" should be Rodney Rhodes, and "Downey" should be Claudia Dowty.

On April 27, 2015, Plaintiff filed a response opposing Defendants' summary judgment motion (Doc. 84).  Defendants replied thereto on May 7, 2015 (Doc. 86).  For the reasons explained below, the Court partially grants and partially denies the summary judgment motion.

**B.    <u>Analysis</u>**

EXHAUSTION UNDER THE **PLRA** AND ILLINOIS LAW

Lawsuits brought by prisoners are governed by the Prison Litigation Reform Act (PLRA), 42 U.S.C 1997e.  The PLRA requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until … administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a) (2013).**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust before he commences his federal litigation; he cannot exhaust *while* his lawsuit is pending.  *See **Perez v. Wisconsin Department of Corr.**, **182 F.3d 532, 535 (7**th **Cir. 1999); Dixon v. Page**, **291 F.3d 485, 488 (7**th **Cir. 2002).**  If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit.  *See **Jones v. Bock**, **549 U.S. 199, 223 (2007); Burrell v. Powers**, **431 F.3d 282, 284-85 (7**th **Cir. 2005).**[2]

The Court of Appeals for the Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement.  *See **Dole v. Chandler**, **438 F.3d 804, 809 (7th Cir. 2006)**

---

[2]    Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation.  *See* **Fed. R. Civ. P. 12(d).**

3

(**'This circuit has taken a strict compliance approach to exhaustion"**).   "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." ***Pozo v. McCaughtry***, **286 F.3d 1022, 1025 (7th Cir. 2002).**   This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." ***Id.* at 1025.**   If the prisoner fails to comply with the established procedures, including time restraints, the court may not consider the claims. ***Pavey v. Conley***, **663 F.3d 899, 903 (7th Cir. 2011).**

The purpose of the exhaustion requirement is two-fold.   First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. ***Kaba v. Stepp***, **458 F.3d 678, 684 (7th Cir. 2006);** ***Woodford v. Ngo***, **548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." ***Porter v. Nussle***, **534 U.S. 516, 524 (2002).** ***See also Booth v. Churner***, **532 U.S. 731, 737 (2001).**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait to commence litigation until he has completed the established process and may not file in anticipation of administrative remedies soon being exhausted. ***Perez,* 182 F.3d at 535,** *citing* **42 U.S.C 1997e(a);** ***Ford v. Johnson***, **362 F.3d 395, 398 (7th Cir. 2004).**   A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted *while* the suit is pending.   ***Perez,* 182 F.3d at 535.**

The exhaustion requirement is an affirmative defense, on which defendants bear the burden of proof.   ***Pavey v. Conley,* 663 F.3d 899, 903 (7th Cir. 2011).**   Here, the

4

moving Defendants raised this affirmative defense in their answers (*see, e.g.,* Doc. 48, p. 24; Doc. 49, p. 24; Doc. 82, p. 19).

The PLRA's exhaustion requirement is dependent upon the procedures established by the state in which the prison is located. ***Jones*, 549 U.S. at 218.** Plaintiff Williams was confined within the Illinois Department of Corrections (IDOC).  As an IDOC inmate, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders to properly exhaust his claims.  **20 Ill. Admin. Code 504.800, *et seq.***  The grievance procedures first require inmates to speak with their Counselor about the issue or problem.  **20 Ill. Admin. Code 504.810(a).**  If the Counselor does not resolve the issue, the inmate must file a grievance within sixty days of the events or occurrence with the Grievance Officer. ***Id.***  The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.  The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code 504.810(b).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code 504.830(d).**   If the inmate is not satisfied with the Chief

Administrative Officer's response, he or she can file an appeal with the Director through the ARB.

More specifically: "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.  Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached."  **20 Ill. Admin. Code 504.850(a).**

"The Administrative Review Board shall submit to the Director a written report of its findings and recommendations."  **20 Ill. Admin. Code 504.850(e).**  "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.  The offender shall be sent a copy of the Director's decision."  **20 Ill. Admin. Code 504.850(f).**

### APPLICATION TO PLAINTIFF'S CLAIMS

The claims in the case at bar may be summarized as follows.  In Count 1, Williams claims that seven Defendants inflicted cruel and unusual punishment on him in violation of the Eighth Amendment when they responded with deliberate indifference to his serious medical need for treatment (in the form of a special housing permit granting a low bunk, low gallery assignment).  In Count 2, Williams claims that seven Defendants inflicted cruel and unusual punishment on him in violation of the Eighth Amendment by rough handling and by delaying medical care (as to Cummins,

Vaughn, and Rhodes), by failing to treat painful back and shoulder injuries (as to Fenoglio), by cancelling physical therapy (as to Martin), and by refusing to summon him to medical appointments (as to Potts and Dowty). In Count 3, Williams claims that eight Defendants violated the First Amendment when they delayed or denied his access to medical treatment in retaliation for his protected speech in the form of grievance activity. In Count 4, Williams claims that eight Defendants conspired to deny him medical treatment in retaliation for his protected grievance activity (Docs. 7, 65).

The motion currently before the Court pertains only to the claims in Counts 1, 3, and 4. The parties have supplied all relevant grievances and related materials and discussed the important facts, such that an evidentiary hearing is not required. The Court finds that Williams **properly exhausted** the administrative remedy process for grievances written on May 22, July 16, August 20, October 7, and October 18, 2012.

A grievance written on November 16, 2012 was not properly exhausted. The appeal was rejected by the ARB on procedural grounds (Doc. 76-20).

A grievance written on May 24, 2014, was not properly exhausted for this case, because it was written after Williams filed this suit (Doc. 84-2, p. 16). *See Burrell v. Powers*, 431 F.3d at 284-85; *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

In reviewing the exhausted grievances, the Court notes that Williams is not required to give individual Defendants advance notice of his intent to pursue specific claims for relief or specific theories of liability. Rather, the Court has focused on the primary goal of the exhaustion requirement, assessing whether Williams alerted prison officials and gave them an opportunity to address his concerns before he commenced

litigation.  *Jones*, **549 U.S. at 218.**  In an effort to maintain clarity, the exhaustion issues here are addressed by Defendant.

### Dr. James Fenoglio

As to Count 1 (medical indifference via deprivation of a special housing permit), the parties are in agreement.   Williams exhausted this claim.

As to Count 3 (retaliation), Williams presented concerns about retaliation in the May 22, July 16, October 7, and October 18, 2012 grievances.  Those grievances gave prison officials a fair opportunity to consider whether Dr. Fenoglio made adverse decisions regarding Williams' medical care because Williams exercised his free speech right by writing a grievance or registering a complaint with the warden.

As to Count 4 (conspiracy), Williams presented concerns about a conspiracy in a November 16, 2012 grievance.  In that grievance, the general reference to "medical staff" and the specific reference to someone other than Fenoglio did not give prison officials a fair opportunity to consider whether Fenoglio agreed to deprive Williams of his constitutional rights.   In any event, that grievance was rejected by the ARB for procedural errors and was not properly exhausted (Doc. 76-20).

### Stephanie Reed

As to Count 3 (retaliation), Williams presented concerns about retaliation in the October 18, 2012 grievance.  This grievance gave prison officials a fair opportunity to consider whether Reed (a nurse at Lawrence) made an adverse decision regarding Williams' medical care because Williams exercised his free speech right by writing grievances.

As to Count 4 (conspiracy), Williams presented concerns about a conspiracy in a November 16, 2012, grievance. The general reference to "nurses" and the specific reference to someone other than Reed did not give prison officials a fair opportunity to consider whether Reed agreed to deprive Williams of his constitutional rights. In any event, that grievance was rejected by the ARB for procedural errors and was not exhausted (Doc. 76-20).

### Claudia Dowty

As to Count 3 (retaliation), Williams presented concerns about retaliation in the May 22, July 16, October 7, and October 18, 2012 grievances. Those grievances did not give prison officials a fair opportunity to consider whether Dowty made adverse decisions regarding Williams' medical care because Williams exercised his free speech right by writing a grievance or registering a complaint with the warden.

As to Count 4 (conspiracy), Williams presented concerns about a conspiracy in a November 16, 2012, grievance. The general reference to "nurses" and the specific reference to someone other than Dowty did not give prison officials a fair opportunity to consider whether Dowty agreed to deprive Williams of his constitutional rights. In any event, that grievance was rejected by the ARB for procedural errors and was not exhausted (Doc. 76-20).

### Patricia Potts

As to Count 3 (retaliation), Williams presented concerns about retaliation in the May 22, July 16, October 7, and October 18, 2012 grievances. Those grievances did not give prison officials a fair opportunity to consider whether Potts made adverse

decisions regarding Williams' medical care because Williams exercised his free speech right by writing a grievance or registering a complaint with the warden.

As to Count 4 (conspiracy),  Williams presented concerns about a conspiracy in a November 16, 2012, grievance.  The general reference to "nurses" and the specific reference to someone other than Potts did not give prison officials a fair opportunity to consider whether Potts agreed to deprive Williams of his constitutional rights.  In any event, that grievance was rejected by the ARB for procedural errors and was not exhausted (Doc. 76-20).

### Kelsey Cummins

As to Count 3 (retaliation), this argument is moot.  Williams is not proceeding against Cummins on Count 3.

As to Count 4 (conspiracy), this argument is moot.  Williams is not proceeding against Cummins on Count 4.

### Lynn Philippe

As to Count 3 (retaliation), Williams presented concerns about retaliation in the May 22, July 16, October 7, and October 18, 2012 grievances.  Those grievances gave prison officials a fair opportunity to consider whether Philippe (a nurse practitioner) made adverse decisions regarding Williams' medical care because Williams exercised his free speech right by writing grievances.

As to Count 4 (conspiracy), Williams presented concerns about a conspiracy in a November 16, 2012, grievance.  That grievance was rejected by the ARB for procedural errors and was not exhausted (Doc. 76-20).

**Angie Hollingsworth**

As to Count 1 (denial of special housing permit), Williams presented concerns about this deprivation of medical care in the May 22, July 16, and October 7, grievances. Those grievances did not give prison officials a fair opportunity to consider whether Hollingsworth deprived Williams of a special housing permit.

As to Count 3 (retaliation), Williams presented concerns about retaliation in the May 22, July 16, October 7, and October 18, 2012 grievances. Those grievances did not give prison officials a fair opportunity to consider whether Hollingsworth made adverse decisions regarding Williams' medical care because Williams exercised his free speech right by writing grievances.

As to Count 4 (conspiracy), Williams presented concerns about a conspiracy in a November 16, 2012, grievance. The general reference to "nurses" and "medical staff" and the specific reference to someone other than Hollingsworth did not give prison officials a fair opportunity to consider whether Hollingsworth agreed to deprive Williams of his constitutional rights. In any event, that grievance was rejected by the ARB for procedural errors and was not exhausted (Doc. 76-20).

C.    **Conclusion**

The motion for summary judgment (Doc. 75) is **GRANTED in part and DENIED in part.** The motion is granted in that the following claims are **DISMISSED without prejudice** for failure to exhaust administrative remedies:

(1)    Williams' medical care claim (Count 1) against Defendant Hollingsworth;

(2)    Williams' retaliation claim (Count 3) against Defendants Hollingsworth, Potts, and Dowty;

11

(3)    Williams' conspiracy claim (Count 4) against Defendants Hollingsworth, Fenoglio, Potts, Dowty, Philippe, and Reed.

The Clerk is **DIRECTED** to terminate Angie Hollingsworth as a Defendant.

Following entry of this Order, the following claims remain:

Count 1 against Dr. Fenoglio, Boldrey, Vaughn, Dallas, Willis, Eubank, and Hodge;

Count 2 against Dr. Fenoglio, Martin, Potts, Dowty, Cummins, Vaughn, and Rhodes;

Count 3 against Dr. Fenoglio, Martin, Philippe, Reed, and Hodge; and

Count 4 against Martin and Hodge.

Finally, upon receiving this case from the docket of Judge Gilbert, the undersigned re-set the jury trial to March 27, 2017 and advised the parties that if they preferred a different or earlier trial date, they could consent to trial of this case by the assigned Magistrate Judge.   The Order then referenced a website where consent forms were available.   Cognizant of Plaintiff's pro se status (and uncertain of his access to internet resources), the undersigned now **DIRECTS** the Clerk's Office to send a consent form to Plaintiff with this Order.   Again, this is for Plaintiff's convenience only and is mentioned simply as one option (*see* Order at Doc. 105).

**IT IS SO ORDERED.**

**DATED June 22, 2016.**

<u>s/ Michael J. Reagan</u>
**Michael J. Reagan**
**United States District Judge**

12